F I L E D
Clerk
District Court

APR 06 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

MD ATAUR RAHMAN,

        Plaintiff,

vs.

HONGKONG ENT. (OVS.) INV. LTD. dba
TINIAN DYNASTY HOTEL & CASINO,

        Defendant.

Civil Case No.: 1:21-cv-00031

**SCREENING ORDER GRANTING IFP APPLICATION AND DISMISSING COMPLAINT**

Before the Court is Plaintiff Mohammad Ataur Rahman's ("Rahman") pro se application to proceed *in forma pauperis* (ECF No. 1) and Complaint ("Complaint," ECF No. 1-2) against Defendant Tinian Dynasty Hotel & Casino ("Tinian Dynasty") asserting claims for unpaid wages and liquidated damages under the Fair Labor Standards Act, a claim of being a human trafficking victim, and two state law claims of unlawful eviction and emotional distress. Rahman supplements his Complaint with his self-statement and numerous supporting documents (Exhibits A to E) evidencing his employment with Tinian Dynasty. (ECF Nos. 1-3 (employment certificate), 1-4 (payroll info and memos), 1-5 (CNMI DOL Administrative Order), 1-6 (efforts made in past related documents), and 1-7 (documents leading to a victim of human trafficking).) The Court is required to screen complaints brought in civil actions by individuals filing *in forma pauperis*. 28 U.S.C. § 1915(e)(2). If, after screening, the Court determines that the complaint is frivolous or malicious, fails to state a claim on which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, it must dismiss the complaint. *Id*. Having reviewed Rahman's application, the Court GRANTS his application to

1

proceed *in forma pauperis*. However, for the reasons stated below, the Court DISMISSES Rahman's Fair Labor Standards Act claim with prejudice, his remaining claims without prejudice, and GRANTS Rahman leave to amend the non-FLSA claims.

## I.    BACKGROUND

For a period of at least 18 years between January 1998 and August 2016, Rahman was employed by the Tinian Dynasty as a security officer. (ECF No. 1-3 at 1.) By 2016, he was earning $9.19 per hour and held the title of security shift manager. (*Id*.) Due to legal issues affecting the Tinian Dynasty's ability to operate, work visas for various employees were denied by U.S. Citizenship & Immigration Services. According to the timesheets provided by Mr. Rahman, his last week of employment was in August 2016. (ECF No. 1-4 at 12.)

In February 2016, Tinian Dynasty entered into a Stipulated Settlement and Consent Judgment with the CNMI Department of Labor before the Commonwealth of the Northern Mariana Islands Department of Labor's Administrative Hearing Office for payment of back wages and liquidated damages to a number of employees, including Rahman. ("Consent Judgment," ECF No. 1-5 at 3.) According to the Consent Judgment, the Tinian Dynasty continued to operate but employees were not paid all their hourly and salaried wages. "About 400 workers continued to work at the Dynasty for more than four months without receiving their owed wages." (*Id*. at 5.) Admitting this failure, Tinian Dynasty owed a total of $1.3 million to its current and former employees. (*Id*.) Ten months after the Consent Judgment was entered, the CNMI Department of Labor obtained a default judgment against Tinian Dynasty in the CNMI Superior Court and the Consent Judgment was registered as a judgment of the court. (ECF No. 1-5 at 2.)

Although Tinian Dynasty paid all the back wages, it failed to pay the 25% liquidated damages included in the Consent Judgment. (ECF No. 1-6 at 1.) Furthermore, 12 payrolls from February 20 to August 5, 2016 were not paid. (*Id*.) The remaining employees lodged a complaint directly with the U.S. Department of Labor. (*Id*.) They wrote a letter to the U.S. Department of Labor Wage & Hour Division informing it that the chairman of Tinian Dynasty "promised to pay all future salary on time and we were advised to continue work." (ECF No. 1-6 at 1.) Furthermore, despite the Tinian Dynasty's closure, the employees were "advised to work continuously[.]" (*Id*.) Rahman signed off as one of the employees who reached out to the Department.

On March 13, 2018, the U.S. Department of Labor Wage & Hour Division responded to Rahman informing him that no further action would be taken to secure payment of money possibly owed to him because "before [Tinian Dynasty] was requested to pay any back wages owed [him] [Tinian Dynasty] had closed it (sic) business in Tinian." (ECF No. 1-6 at 6.) "[A]fter reviewing all of the circumstances in this case, it has been decided that it is not suitable for litigation by the Department." (*Id*.) The Department did inform Rahman of his right to bring an independent suit to recover back wages; however, it also warned Rahman that "recovery of back wages under th[e Fair Labor Standards Act] is subject to a statute of limitations. Generally, this means that any part of a back wage claim which was earned more than two years before suit is filed may not be collectible." (*Id*. at 7.)

In support of his claim of having been subjected to eviction from the company staff housing, Rahman provided a letter dated August 11, 2020 from a former Tinian Dynasty security officer, Manoj Harjani, stating that Rahman was escorted out of the housing facilities by Harjani. (ECF No. 1-3 at 9.)

3

Based on all these facts, Rahman asserts he is entitled to back (unpaid) wages and liquidated damages under the FLSA, as well as a claim of being a victim of human trafficking, and claims for eviction and emotional distress. (Compl. 4; Statement 1, ECF No. 1-2.) The total amount sought is $8,671.00 plus liquidated damages. (*Id*.)

## II.    LEGAL STANDARD

### A.  IFP Application

All parties instituting any civil action, suit, or proceeding in a district court of the United States must pay a filing fee of $402. *See* 28 U.S.C. § 1914(a). An individual may commence a lawsuit *in forma pauperis*—in other words, without prepaying the filing fee—if the individual proves an inability to pay. *See* 28 U.S.C. § 1915(a). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). The decision of whether to grant an IFP application is left to the discretion of the district court. *Id*. Based on Rahman's IFP application, he clearly satisfies the IFP standard. (*See* ECF No. 1.) Accordingly, the Court will GRANT Mr. Rahman's IFP application and waive the initial filing fee.

### B.  Screening of Complaint

Because this is a civil action by a pro se party filing *in forma pauperis*, the Court will examine the complaint to determine if it passes screening. A complaint fails to state a claim if it lacks a cognizable legal theory or does not allege enough facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). As a baseline requirement, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). The complaint need not include detailed allegations, but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even under the heightened *Twombly/Iqbal* pleading standard, the "'obligation' remains, 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). However, the court may not supply essential elements of the claim that were not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

/ / /

/ /

/

### III.    DISCUSSION

**A.  Fair Labor Standards Act**

The FLSA mandates that employers with employees "engaged in commerce or in the production of goods for commerce" pay their employees federal minimum wages.[1] 29 U.S.C. § 206(a). Since 2007, the federal minimum wage has been $7.25 per hour. *Id*. at § 206(a)(1). Employers also cannot require their employees to work more than forty hours a week unless the employee receives compensation at a rate not less than one and one-half times the regular rate at which he is employed. *Id*. at § 207(a)(1). An employer who violates Section 206 or 207 is liable to the employee for "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id*. at § 216(b).

An FLSA claim "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued . . . ." 29 U.S.C. § 255(a). The statute of limitations may be extended to three years where there is a willful violation of the FLSA. 29 U.S.C. § 255(a); *see Yu Xuan v. Joo Yeon Corp*., 2016 WL 9022781, at *9 (D. N. Mar. I. Nov. 22, 2016) (acknowledging statute of limitations under the FLSA); *Wang v. Am. Sai Green Corp*., 2014 WL 1365740, at *3 (D. N. Mar. I. Apr. 4, 2014) (same).

---

[1] Plaintiff's Complaint did not establish whether Defendant meets the definition of "employer" under the FLSA. *See* 29 U.S. § 203(s)(1)(A)(i)-(ii). However, in accord with this Court's decision in *Monshi v. Bhuiyan*, whether Defendants qualify as an enterprise engaged in commerce is not a jurisdictional issue. 2018 WL 11027256, at *2 (D. N. Mar. I. June 7, 2018). Similarly, "the [FLSA] statute does not expressly indicate that the annual gross volume requirement or commerce requirement is jurisdictional nature." *Id*.

Here, Mr. Rahman claims he was not paid from February 20, 2016 to August 5, 2016 (ECF No. 1-2 at 1) and may have continued his employment as late as January 5, 2017. (ECF No. 1-6 at 9.) Thus, at the very latest, assuming there was a willful violation, Mr. Rahman should have filed his complaint with the Court sometime on or before January 5, 2020. Unfortunately, the complaint was filed in August 2021—approximately a year and a half after the statute of limitations had run. Indeed, the U.S. Department of Labor informed Rahman on March 13, 2018 when it decided not to pursue his claim to "keep in mind that recovery of back wages under this law is subject to a statute of limitations. Generally, this means that any part of a back wage claim which was earned more than two years before suit is filed may not be collectible." (ECF No. 1-6 at 7.) Consequently, the Court must dismiss Mr. Rahman's FLSA claim on the basis that his claim is time barred by the statute of limitations.

### B. Human Trafficking

Rahman also asserts that he was the subject of forced labor and human trafficking: "I was also subject to severe form of human trafficking in person." (ECF No. 1-2 at 1.) He does not cite to any specific federal or CNMI law creating a private right of action for human trafficking. Nevertheless, the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") provides criminal penalties for anyone who "knowingly" obtains labor or services in four ways:

(1) By means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) By means of serious harm or threats of serious harm to that person or another person;
(3) By means of the abuse or threatened abuse of law or legal process; or
(4) By means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a)(1)-(4). 18 U.S.C. § 1590(a) also penalizes anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means any person for labor or services in violation of this chapter." Section 1595(a) of the TVPRA provides victims civil remedies, including damages and attorneys' fees "against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." Similarly, the CNMI Anti-Trafficking Act criminally penalizes human trafficking for involuntary servitude. *See* 6 CMC §§ 1502, 1503. "An individual who is a victim of a violation under this Act may bring a subsequent civil action in the Commonwealth Superior Court." *Id*. at § 1507.

Rahman has not asserted a claim specific to either one of these provisions. Thus, it is unclear how this Court has jurisdiction over Rahman's claim, either in federal question or in supplemental. Furthermore, even if he were to reference one of these provisions, Rahman has not stated with any particularity how he was the subject of forced labor and human trafficking when he was initially lawfully employed with Tinian Dynasty. In fact, Tinian Dynasty employees received a letter dated March 3, 2016 indicating that while hotel operations would be suspended for six weeks, housing would be free and meals would continue to be served. (ECF No. 1-4 at 21.) Without more, the Court is hard-pressed to find that his claim of human trafficking is in compliance with Rule 8 of the Federal Rules of Civil Procedure and does not pass screening. Nevertheless, Mr. Rahman may amend his complaint to describe with sufficient detail how his claims satisfies the jurisdiction of this Court.

/ /

/

## C. Unlawful Eviction

Rahman additionally claims he was unlawfully evicted from the premises: "I was also subject to eviction as I was housed in the company staff housing." (Compl. 1.) Security Officer Harjani's letter corroborates this information indicating that Rahman was escorted out of the housing facilities. (ECF No. 1-3 at 9.) Again, Rahman has not provided the Court with any reference to a specific federal or state law to support his claim. Rahman failed to allege he was entitled to staff housing when he was evicted either through a rental agreement or some other contract which would otherwise permit him to remain in the housing. Thus, it is unclear on what legal basis Rahman is asserting a wrongful eviction claim, and Rahman must plead enough facts to meet the pleading standards of Rule 8. Rahman's bare assertions that he was unlawfully evicted and a letter indicating that he was escorted out of the staff housing is insufficient to pass muster under Rule 8. Consequently, the Court will dismiss this claim but grant Rahman leave to amend.

## D. Emotional Distress

Emotional distress is a state-law claim. In his supporting this claim, Rahman stated he had been "harassed mentally and emotionally." (ECF No. 1-2 at 1.) The Court is unable to gather facts from the supporting documents to show how he was "harassed" and how the harassment caused him injury. The Court therefore dismisses Rahman's emotional distress claim but grants him leave to amend to articulate more facts to plausibly establish this cause of action.

## IV.    CONCLUSION

Based on the foregoing, the Court GRANTS Rahman's IFP application, but DISMISSES WITHOUT PREJDUICE all his claims in his complaint with the exception of his FLSA claim, which

is time-barred and therefore DISMISSED WITH PREJUDICE. Rahman may file an amended complaint correcting the deficiencies identified in his original complaint. Rahman must restate all necessary factual allegations, all claims against every individual or entity he intends to sue, and all remedies sought in the First Amended Complaint should he choose to file one. The amended complaint should include the caption and civil case number used in this order, and the title FIRST AMENDED COMPLAINT on the first page. Because the FLSA claim is dismissed with prejudice, and in the event Rahman does not assert a federal question claim, Rahman is placed on notice that his state law claims must satisfy the diversity jurisdiction requirements, including a threshold amount exceeds the sum or value of $75,000 exclusive of interest and costs. 28 U.S.C. § 1332.

Rahman's first amended complaint must be filed no later than May 6, 2022. Rahman is cautioned that his amended complaint must be a complete statement of his claims and will supersede existing pleadings. "[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981), overruled on other grounds by *Lacey v. Maricopa Cnty.*, 644 F.2d 811 (9th Cir. 2012).

IT IS SO ORDERED this 6th day of April, 2022.

RAMONA V. MANGLONA
Chief Judge

10